UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA



OSSIRIS LYNCH,
Plaintiff,
v.
GRANBURY AT VALLEY VISTA HOMEOWNERS ASSOCIATION,
Defendant.

Case No. 2:25-cv-01959-APG-BNW

PANTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff, Ossiris Lynch, appearing pro se, submits this Combined Opposition to Defendant's Motion to Dismiss.
This case arises entirely under Nevada law and concerns misuse of HOA funds, retaliation, and breaches of fiduciary duty inside the Granbury at Valley Vista Homeowners Association.
Defendant's Motion should be denied because (1) this Court lacks subject-matter jurisdiction, and (2) even if jurisdiction were proper, Plaintiff's claims are well-pleaded and supported by documentary and video evidence.
A Motion to Remand remains pending. As held in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998), a court must determine jurisdiction before addressing the merits. The Motion to Dismiss is therefore premature. Nevertheless, if the Court reaches the merits, dismissal is still improper.

## II. PROCEDURAL HISTORY

1. Plaintiff filed this civil action in the Eighth Judicial District Court of Clark County, Nevada, on September 23, 2025.
2. The Complaint alleged violations of Nevada Revised Statutes Chapter 116, including retaliation, selective enforcement, and misuse of HOA funds by former board members of the Granbury at Valley Vista Homeowners Association.
3. On October 13, 2025, Defendant removed the case to the United States District Court for the District of Nevada, asserting federal-question jurisdiction.
4. On October 20, 2025, Plaintiff filed a Motion to Remand, clarifying that all causes of action arise solely under Nevada state law and that no federal

question exists.

5. Despite the pending Motion to Remand, Defendant filed its Motion to Dismiss on October 20, 2025, seeking dismissal under Federal Rule of Civil Procedure 12(b)(6).

6. This Opposition follows to demonstrate that Defendant's removal was improper, and that even if jurisdiction were found proper, Plaintiff's claims are well-pleaded and supported by admissible evidence.

## III. STANDARD UNDER RULE 12(b)(6)

Rule 12(b)(6) allows dismissal only if a complaint fails to state a claim upon which relief can be granted.

Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a complaint must include enough factual matter to state a claim that is "plausible on its face." The Court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor, but it need not accept mere legal conclusions.

The Supreme Court replaced the former "no set of facts" rule from *Conley v. Gibson* (1957) with this "plausibility" test, meaning a complaint must allege more than labels and conclusions but less than detailed evidence. A claim is plausible when the facts allow the Court to infer that the defendant is liable for the misconduct alleged.

At the pleading stage, the issue is not whether Plaintiff will ultimately prevail but whether he is entitled to present evidence to prove his claims. *Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007).

If the Court finds any technical deficiency, Federal Rule 15(a)(2) instructs that "leave shall be freely given when justice so requires." Plaintiff therefore requests that any dismissal, if granted in part, be with leave to amend.

## IV. BACKGROUND

This case arises from a pattern of retaliation and misuse of association resources within the Granbury at Valley Vista Homeowners Association ("Granbury HOA"). Plaintiff, a resident and homeowner, has been the subject of repeated, unjustified actions by prior board members—specifically former President Dan Brandmyer and Vice President Amy Wright Easton—who used HOA funds and authority for personal motives rather than legitimate community business.

Plaintiff's concerns about improper financial and governance practices were first raised through appropriate HOA channels and later through the Nevada Real Estate Division's Alternative Dispute Resolution (NRED ADR) program. That process resulted in a negotiated understanding that the HOA would reimburse Plaintiff's attorney fees in the amount of $7,500 to avoid further litigation. However, after the NRED matter was closed, the prior board leadership escalated hostile actions instead of complying in good faith.

Evidence shows that Brandmyer and Easton used HOA legal counsel and funds to

conduct a background check on Plaintiff's household without board approval (Exhibit G), contacted law enforcement to attempt to restrict Plaintiff's lawful access to common areas (Exhibits E–F), and supported online posts targeting Plaintiff's family, including his minor son. Treasurer Linda Buckingham later confirmed publicly that more than $31,000 of HOA legal expenditures were unrelated to community business.

Plaintiff's wife, Kengel Rankin-Lynch, now serves as the current HOA President. The retaliation and misuse of funds occurred under the prior board, before her tenure. This lawsuit seeks to hold the association accountable for those prior acts and to clarify that homeowners are entitled to equal and lawful treatment under Nevada Revised Statutes Chapter 116.

## V. STATEMENT OF FACTS

1. Plaintiff is a homeowner in the Granbury at Valley Vista community, located in North Las Vegas, Nevada.

2. In early 2022, Plaintiff began raising concerns about improper actions by members of the HOA board, including selective enforcement of community rules and irregular use of association funds.

3. Between April 4 and June 4, 2024, several service calls were made to the North Las Vegas Police Department regarding minor community issues. The call log (Exhibit E) and body-camera footage (Exhibit F) show that former HOA President Dan Brandmyer did not appear for any of those calls except the incident on May 4, 2024—the same day Plaintiff had a dispute with former board members Amy and Rashad Easton. Brandmyer's decision to involve himself only in that single event demonstrates a pattern of selective enforcement, harassment, and discriminatory targeting against Plaintiff.

4. These actions demonstrated a deliberate misuse of Trespass Authority to intimidate and isolate Plaintiff within his own neighborhood.

5. During this same period, former board member Amy Wright Easton targeted Plaintiff and his family online. Exhibit H is a post made by Amy containing Plaintiff's criminal record in retaliation for his petition against former President Dan Brandmyer. Exhibit I is Amy's own written admission that she posted it on her community Facebook page. Exhibit J is the separate post Amy made targeting Plaintiff's minor son, Kingston.

6. In mid-2024, Treasurer Linda Buckingham publicly acknowledged that more than $31,000 of HOA legal expenditures were unrelated to legitimate association business and had been used by former board members to pursue personal disputes against homeowners.

7. Evidence later surfaced showing that then-President Dan Brandmyer and Vice President Amy Wright Easton used HOA funds to order a background check on Plaintiff's household without authorization from the

board (Exhibit G).

8. Plaintiff initiated a complaint through the Nevada Real Estate Division's Alternative Dispute Resolution (NRED ADR) program concerning these acts of retaliation and financial misuse. The ADR process resulted in an understanding that the HOA would reimburse Plaintiff's attorney fees in the amount of $7,500 to avoid further litigation.

9. Despite that resolution, board members instructed the management company to close the matter and pay Plaintiff as agreed. However, the association's legal counsel and management company refused to carry out those instructions and instead continued to send threatening letters and demands to Plaintiff.

10. Exhibit S shows a letter from HOA attorney Matthew J. McAlonis, Esq., demanding that Plaintiff's wife, Kengel Rankin-Lynch, resign from the HOA board—despite no such action ever being taken against Brandmyer or Easton for their proven misconduct.

11. Exhibit T contains a response from Plaintiff's former attorney, Rusty, rebutting McAlonis's improper demand and clarifying that the HOA's legal team was acting outside the scope of its duty to the association.

12. Plaintiff has incurred continued emotional distress and reputational harm due to the ongoing harassment, misuse of HOA funds, and targeted actions by the prior board leadership.

13. Plaintiff's wife, Kengel Rankin-Lynch, was later elected as the current HOA President. The retaliatory acts at issue in this case occurred before her tenure and under the leadership of Brandmyer and Easton.

14. Plaintiff brings this action under Nevada Revised Statutes Chapter 116 to hold the association accountable for the prior board's misconduct and to prevent future misuse of authority and association resources.

## VI. ARGUMENT

### A. Lack of Subject-Matter Jurisdiction

Federal courts have limited jurisdiction and may hear only cases arising under federal law or involving parties from different states. Plaintiff's Complaint asserts only Nevada state-law claims under NRS Chapter 116. There is no federal question and no diversity of citizenship because both Plaintiff and Defendant are Nevada residents.

Defendant improperly removed this matter by mischaracterizing Plaintiff's references to retaliation and discrimination as federal Fair Housing Act claims. Plaintiff made no such assertion. Under Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94–95 (1998), a court must confirm subject-matter jurisdiction before reaching the merits. Because this case arises entirely under Nevada law, the Court should remand the case to state court or, at minimum, deny or hold Defendant's Motion to Dismiss in abeyance until jurisdiction is resolved.

**B. Compliance with Rule 8 and Rule 10**

Defendant claims the Complaint lacks specificity, but it provides a clear narrative supported by dates, names, and documentary evidence. Rule 8 requires only a "short and plain statement" showing entitlement to relief, not detailed proof. Plaintiff's exhibits (E–J, S–V, and now W–X) provide concrete evidence of specific misconduct, including unauthorized police involvement, online harassment, and misuse of HOA funds.

Pro se pleadings are read liberally. Haines v. Kerner, 404 U.S. 519 (1972).

Plaintiff's factual allegations go far beyond mere conclusions—they include direct evidence from public records, police reports, and statements by HOA officials. The Complaint therefore meets the Twombly and Iqbal plausibility standard by showing more than a conceivable claim; it sets forth specific, plausible facts demonstrating liability.

**C. Breach of Settlement Agreement**

Defendant's claim that no settlement existed is false and contradicted by their own written communications and drafted agreement.

Exhibit W is an October 6, 2025 email from Defendant's counsel, Inku Nam, confirming that counsel had "attached an agreement that would resolve the NRED matter and the lawsuit." Exhibit X is a follow-up email from the same counsel stating, "Here's the updated settlement agreement that addresses Mr. Lynch's lawsuit. This agreement is good so long as we don't start spending money on the new lawsuit, so we should try to wrap this up as soon as possible."

Attached to those emails is the Settlement Agreement and Release, which specifically named Granbury at Valley Vista Homeowners Association as the paying party and obligated the HOA to issue payment of $7,500.00 within thirty (30) days. The agreement, drafted by the HOA's own attorneys, confirms the HOA's intent to resolve both the NRED ADR case and the related civil claims.

The HOA's argument that no settlement existed ignores this clear written record. There was an offer, a written agreement, and board-level approval directing the management company to close the matter and pay Plaintiff.

Plaintiff ultimately declined the $7,500 offer—not because no agreement existed, but because it did not cover the substantial costs that had since been incurred for filing the civil suit and months of attorney time attempting to finalize the payment since February 2024. Plaintiff made clear in his subsequent correspondence that he remained open to a reasonable resolution that accounted for those additional costs.

Under Nevada law, an enforceable agreement requires only offer, acceptance, and consideration. May v. Anderson, 121 Nev. 668 (2005). Those elements are satisfied here: the HOA offered payment, Plaintiff participated in settlement discussions in good faith, and both sides acted upon the understanding that the ADR claim and lawsuit would be resolved through payment.

Defendant's refusal to complete payment and mischaracterization of the settlement's existence constitute both breach of the agreement and bad faith in performance under Nevada law.

**D. Retaliation Under NRS 116.31183**

Defendant argues that Plaintiff failed to exhaust administrative remedies, but the record proves otherwise. Plaintiff filed a complaint through NRED ADR, participated fully, and obtained an outcome where the HOA agreed to reimburse his attorney fees. That process satisfies the exhaustion requirement of NRS 38.310.

Furthermore, Exhibits E and F show that after the NRED matter concluded, former President Dan Brandmyer selectively involved himself in only one police call—May 4, 2024—the same day Plaintiff had an encounter with Amy and Rashad Easton. His appearance and conduct during that single incident demonstrate a deliberate pattern of selective enforcement and retaliation. Those facts are sufficient to establish a plausible claim under NRS 116.31183.

**E. Misuse of HOA Funds and Selective Enforcement**

Defendant downplays the financial misconduct, but Treasurer Linda Buckingham publicly acknowledged that more than $31,000 of HOA funds were misused on personal legal vendettas. Exhibit G further confirms that Brandmyer and Easton used association funds to conduct a background check on Plaintiff's family without any legitimate board approval.

Such acts are not covered by the HOA's enforcement authority and therefore fall outside NRS 38.310's mediation requirement. This is financial misconduct and self-dealing, not interpretation or application of covenants. The Complaint states a valid claim under Nevada law for misuse of funds and selective enforcement.

**F. Intentional Infliction of Emotional Distress**

Defendant argues that Plaintiff failed to allege "extreme or outrageous" conduct, but the evidence proves otherwise. Exhibits E and F show coordinated efforts by Brandmyer and the Eastons to involve police unnecessarily and attempt to exclude Plaintiff from common areas of his own neighborhood.

Exhibits H, I, and J show online retaliation by Amy Wright Easton, who published Plaintiff's criminal record, admitted to posting it on her Facebook page, and later posted a video targeting Plaintiff's minor son, Kingston. Such conduct exceeds mere rudeness—it is harassment and humiliation carried out through abuse of HOA authority and public exposure. These acts meet the standard for extreme and outrageous behavior under Olivero v. Lowe, 995 P.2d 1023 (Nev. 2000).

**G. Breach of Fiduciary Duty and Attorney Misconduct**

Defendant claims no fiduciary duty was breached, yet Nevada law imposes a clear duty on HOA boards and their agents to act in the best interests of the association and its members. NRS 116.3103 requires board members and agents, including legal counsel acting on behalf of the association, to exercise loyalty and impartiality.

Exhibit S shows HOA attorney Matthew J. McAlonis demanding that Plaintiff's wife, Kengel Rankin-Lynch, resign from the board while ignoring clear violations by Brandmyer and Easton. Exhibit T contains Plaintiff's former attorney Rusty's rebuttal, confirming that McAlonis's demand exceeded his authority and lacked legal basis.

By pursuing personal agendas for select board members, HOA counsel violated his ethical duty under RPC 1.13 and the fiduciary obligations imposed by NRS 116.3103. These facts easily state a plausible claim for breach of fiduciary duty and attorney misconduct.

**H. Declaratory Relief**

Declaratory relief is not a redundant claim in this context; it serves to clarify ongoing rights and obligations within the association. Plaintiff seeks a declaration confirming that the HOA may not misuse association funds, target residents, or retaliate against homeowners exercising protected rights under NRS Chapter 116. The Ninth Circuit recognizes declaratory relief as an appropriate remedy where clarification of legal relations will prevent future harm. Guerra v. Sutton, 783 F.2d 1371 (9th Cir. 1986). Granting such relief here would resolve continuing uncertainty and prevent recurrence of the misconduct at issue.

## VII. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss should be denied in its entirety.

Plaintiff's Complaint asserts valid, well-pleaded claims under Nevada law and is supported by detailed factual allegations and documentary evidence, including police records, financial documents, and written communications from Defendant's own counsel.

This Motion is premature, as the Court has not yet ruled on Plaintiff's pending Motion to Remand. Under Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94–95 (1998), a court must confirm jurisdiction before addressing the merits of any motion. Proceeding otherwise would contradict well-established jurisdictional principles and prejudice the Plaintiff's right to have this matter properly adjudicated in state court.

If the Court determines that any portion of the Complaint is deficient, Plaintiff respectfully requests leave to amend under Federal Rule of Civil Procedure 15(a)(2), which directs that leave "shall be freely given when justice so requires."

Because this matter arises entirely under Nevada Revised Statutes Chapter 116 and remains subject to a pending Motion to Remand, Plaintiff further requests that the Court decline to rule on Defendant's Motion to Dismiss until jurisdiction is resolved.

Accordingly, Plaintiff respectfully requests that the Court:

1. Deny Defendant's Motion to Dismiss as premature;
2. Alternatively, deny the Motion on its merits; or
3. Grant Plaintiff leave to amend the Complaint if any portion is found technically deficient.

Respectfully submitted this 27th day of October 2025.

Ossiris Lynch
Pro Se Plaintiff

9260 S. Rainbow Blvd Ste 100
Las Vegas NV 89139
(702) 972-7099

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

OSSIRIS LYNCH, Plaintiff,
v.
GRANBURY AT VALLEY VISTA HOMEOWNERS ASSOCIATION, Defendant.
Case No. 2:25-cv-01959-APG-BNW

NOTICE OF FILING
IN SUPPORT OF PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Ossiris Lynch, hereby gives notice that the following documents are submitted in support of Plaintiff's Combined Opposition to Defendant's Motion to Dismiss, filed on October 27, 2025. This filing is submitted in conjunction with the pending Motion to Remand and is intended to preserve Plaintiff's procedural and substantive rights under Nevada law and Federal Rule of Civil Procedure 15(a)(2).

Exhibits Filed in Support:
- Exhibit E: Police Call Log (April–June 2024)
- Exhibit F: Body Camera Footage Transcript
- Exhibit G: Unauthorized Background Check Records
- Exhibit H: Facebook Post Containing Plaintiff's Record
- Exhibit I: Admission by Amy Wright Easton Regarding Online Post
- Exhibit J: Post Targeting Plaintiff's Minor Son
- Exhibit S: Letter from HOA Attorney Matthew J. McAlonis
- Exhibit T: Response from Attorney Rusty Rebutting Improper Demand
- Exhibit W: October 6, 2025 Email from Defense Counsel Regarding Settlement
- Exhibit X: Follow-Up Email and Draft Settlement Agreement

These exhibits provide factual and documentary support for Plaintiff's Opposition, demonstrating that Defendant's Motion to Dismiss is both premature and without merit.

Authority: Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.")

Respectfully submitted this 27th day of October 2025.

/s/ Ossiris Lynch
Ossiris Lynch
Pro Se Plaintiff
9260 S. Rainbow Blvd, Ste 100
Las Vegas, NV 89139
(702) 972-7099
ossirislynch1@gmail.com


CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I mailed a true and correct copy of the foregoing
Notice of Filing in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss to counsel
for Defendant via electronic mail and U.S. Mail at the following address:

Inku Nam, Esq.
O'Hagan Meyer PLLC
10777 West Twain Avenue, Suite 300
Las Vegas, NV 89135
inam@ohaganmeyer.com

DATED this 27th day of October 2025.

/s/ Ossiris Lynch
Ossiris Lynch, Pro Se

 Gmail

---

## Settlement Agreement | Lynch v Valley Vista [IMAN-ACTIVE.FID556704]

---

**Inku Nam** <inam@ohaganmeyer.com>                          Mon, Oct 6, 2025 at 2:47 PM
To: Ossiris Lynch <ossirislynch1@gmail.com>
Cc: Kevin Golden <kgolden@ohaganmeyer.com>

Mr. Lynch,

In light of the fact that you are no longer represented in the NRED matter noted above, I am reaching out to you directly. If you have new counsel, I must speak with them. But if not, you can respond to this email or call me directly at 725-286-2804.

That said, I have attached an agreement that would resolve the NRED matter and the lawsuit you filed recently. If this is acceptable on your end, please confirm so we can confirm authority to conclude the matter. Please advise at your earliest convenience. If you have any questions, please let me know – however, I will be unable to offer you legal advice.

Thanks,
Inku

**Inku Nam**

recipient, you are hereby notified that any dissemination, duplication or distribution of all, or any part of this message, or any file associated with this message, is strictly prohibited. If you have received this communication in error, please notify Black & Wadhams immediately by telephone (702-869-8801) and destroy the original message. Please be further advised that any message sent to or from Black & Wadhams may be monitored.

    Please consider the environment before printing this e-mail.

**From:** Inku Nam <inam@ohaganmeyer.com>
**Sent:** Wednesday, October 1, 2025 5:22 PM
**To:** Rusty Graf <rgraf@blackwadhams.law>
**Cc:** Kevin Golden <kgolden@ohaganmeyer.com>; Sasha Araujo <saraujo@blackwadhams.law>; Diane Meeter <dmeeter@blackwadhams.law>
**Subject:** RE: Settlement I Lynch v Valley Vista [IMAN-ACTIVE.FID556704]

**This message has originated from outside your organization.**

Rusty,


Here's the updated settlement agreement that addresses Mr. Lynch's lawsuit. This agreement is good so long as we don't start spending money on the new lawsuit, so we should try to wrap this up as soon as possible.


**Inku Nam**

<u>**SETTLEMENT AGREEMENT AND RELEASE**</u>

This SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is by and between Ossiris Dizon Lynch ("Lynch") and Kengel Danissa Rankin ("Rankin") (collectively, Lynch and Rankin are referred to as the "Claimants") and Granbury at Valley Vista Claimants Association (the "Association") (individually each a "Party" and collectively the "Parties").

**BACKGROUND**

Whereas, on or about October 14, 2024, the Claimants submitted a claim to the Nevada Real Estate Division ("NRED"), Claim Number 25-083, alleging violations against the Association (the "NRED Claim"); and

Whereas, NRED scheduled a mediation pursuant to the NRED Claim to be held on February 21, 2025; and

Whereas, on or about February 26, 2015, NRED issued a notice indicating that the NRED claim was not resolved at the mediation that was scheduled for February 21, 2025; and

Whereas, Lynch thereafter filed a lawsuit styled *Ossiris D. Lynch v. Grandbury HOA*, Valley Vista in the Eighth Judicia District Court for Clark County, Nevada, Case No. A-25-927483-C relating to a demand for payment towards resolution of the NRED Claim and legal fees allegedly incurred (the "Lynch Lawsuit");

In consideration of the mutual promises set forth below, the Parties hereby agree as follows:

**AGREEMENT TERMS**

1. <u>Recitals.</u>  The above recitals are incorporated herein by reference as if fully stated.

2. <u>Payment.</u>  On or before 30 days of the full execution of this Agreement, the Association shall caused to be paid to the Claimants the total amount of SEVEN THOUSAND FIVE HUNDRED dollars and ZERO cents ($7,500.00) (the "Settlement Payment").  The Settlement Payment shall be made by check payable to Ossiris Lynch and sent to [insert address].

3. <u>General Release by the Claimants.</u>  Upon payment of the amount set forth in Paragraph 2 of this Agreement, the Claimants hereby release and forever discharge the Association, and all their past and present board members, officers, shareholders, principals, directors, insurers, reinsurers, subsidiary entities, parent entities, related entities, affiliated entities, contractors, attorneys, employees, and agents, and all of the respective heirs, personal representatives, successors and assigns of all of the foregoing persons or entities, from

-1-

any and all actions, suits, debts, claims and demands whatsoever, administratively, at law or in equity, whether known or unknown, whether or not previously asserted, fixed or contingent that the Claimants have, may have, or claim to have, from the beginning of the world to the date of this Agreement relating to the claims, allegations, and disputes raised and/or alleged in the NRED Claim and the Lynch Lawsuit (but only those raised in the NRED Claim and the Lynch Lawsuit).

4.    <u>Attorneys' Fees.</u>  Each Party to this Agreement shall be responsible for their or its own costs and attorneys' fees in connection with the NRED Claim, the Lynch Lawsuit, and this Agreement.

5.    <u>Dismissal of Suit.</u>   Within five (5) business day following receipt of the Settlement Payment, Lynch will file a dismissal of the Lynch Lawsuit, with prejudice, and serve proof of the same upon the Association.

6.    <u>Confidentiality.</u>  The Parties to this Agreement mutually agree that they have, and will continue to keep, the fact, amount, and terms of this settlement in strict confidence, unless and only to the extent a Party has been authorized in writing by the other Parties to make such disclosure.  The Parties may, if specifically asked about any dispute with the other Party, state it was resolved satisfactorily, but the Parties shall not further characterize the settlement or the claims that were the subject of this Agreement.  The Parties further agree not to disclose this document, its contents, or subject matter to any person other than to their lawyers, accountants, association board and/or officers, income tax preparers, or spouse, except pursuant to written authorization by the other Party or as compelled by law or Court Order, or as required by NRS 116.31088.

7.    <u>Denial of Liability.</u>  This Agreement represents the compromise of disputed claims.  The execution of this Agreement shall not be construed as an admission of liability, or of any violation of any statute or law, or of any breach of duty or obligation by any of the Parties to this Agreement, by any of their officers, agents or employees, or by anyone else. Further, the Association, on behalf of itself and its current and former board members and officers, denies the allegations of and within the NRED Claim and denies that any discrimination on its part based on race or other protected characteristics.

8.    <u>Entire Agreement.</u>  This Agreement constitutes the full and entire understanding among the Parties.  It supersedes all prior oral or written agreements, contracts, understandings, and representations between the Parties or any of them.  Each Party to this Agreement specifically acknowledges and agrees that he or it has not relied upon any written or oral representation or promise in entering into this Agreement, other than those expressly set forth herein.

9. <u>Amendments in Writing.</u>    No amendment, supplement, or modification of this Agreement, nor any waiver of any provision thereof shall be effective unless in writing and executed by each of the Parties to this Agreement.

10. <u>Construction and Severability.</u>  This Agreement shall not be deemed to have been drafted by any one Party, group of Parties, or side for purposes of any rule of construction.  If any term, covenant, or condition of this Agreement shall be deemed by any court to be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby.  This Agreement may be executed in counterparts, in which case, it shall be considered and treated the same as if all Parties had executed the same original document.

11. <u>Governing Law.</u>  This Agreement is made pursuant to and shall be governed in all respects by the laws of Nevada, without giving effect to any principles of conflict of laws.

12. <u>Successors and Assigns.</u>  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, personal representatives, successors, and assigns.

13. <u>Signatories' Acknowledgments.</u>  Each of the undersigned signatories to this Agreement acknowledges and agrees that he or it is entering into this Agreement knowingly and voluntarily, having personally read this Agreement in full, having full knowledge and understanding of all its provisions, and having had adequate opportunity to review it with counsel.  Each undersigned signatory signing on behalf of the corporate entities, partnerships, or limited liability companies further acknowledges that he or it has actual authority to enter into this Agreement on behalf of each entity for which he or it signs, and that any approvals and corporate formalities required to enter into this Agreement have been completed prior to signature.

14. <u>Counterparts.</u>  This Agreement may be executed in any number of original or telecopied counterparts, each of which shall be deemed to be an original as against any Party whose signature appears thereon, and all of which shall together constitute one and the same instrument. The Parties consent to the use of electronic signatures.

15. <u>Tax Consequences.</u>  The Parties represent that they have not relied upon the advice of any other Party or their attorneys concerning the legal and income tax consequences of this Agreement.

16. <u>Effectiveness.</u>  This Agreement shall become effective on the date on which it has been fully executed by all Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates set forth below.

Dated: _____

_____
Ossiris Dizon Lynch


Dated: _____

_____
Kengel Danissa Rankin


Dated: _____

_____
Representative of Granbury at Valley Vista
Homeowners Association

-4-

 Gmail

## Settlement Agreement | Lynch v Valley Vista [IMAN-ACTIVE.FID556704]

**Ossiris Lynch** <ossirislynch1@gmail.com>                    Mon, Oct 13, 2025 at 6:25 PM
To: Inku Nam <inam@ohaganmeyer.com>

Thank you for your message. I note your acknowledgment that the errors in your correspondence, specifically the incorrect date and the misnaming of the association were "typographical" in nature. While I appreciate the clarification, such errors in formal legal communication can have significant implications, especially in the context of a demand response.

Regarding your statement that legal fees are "not generally recoverable," I must clarify that the damages sought are directly tied to actions undertaken by and through the association's representatives and legal counsel, including but not limited to conduct that was outside the scope of legitimate HOA operations. The expenditures at issue were incurred as a direct result of those actions, and the supporting documentation is already contained within the exhibits submitted to the court.

While it appears that the approximately $31,000 in legal expenditures authorized under former President Dan Brandmyer may have involved multiple residents, a substantial portion of those funds were directed toward actions against my household. My own attorney fees currently exceed $26,000, as documented in the existing exhibits. For the month of October, I paid an additional invoice of $232.00, and my upcoming November bill of $1,300.30 will be added to the exhibit record accordingly.

As for your request for additional billing records, I will provide any further documentation once the parties have entered formal discovery or as otherwise required by court procedure. At this stage, my demand remains properly supported by the factual record and recent board disclosures.

Given that the deadline for your client's response is tomorrow, I expect acknowledgment of this correspondence within that time frame. I am open to reviewing a written proposal once your client has completed its internal review of the approximately $31,000 in legal expenditures made by former President Dan Brandmyer, and former Vice President Amy Easton who used attorney John Leach for matters unrelated to legitimate HOA business.

Please note that all communications may be preserved and submitted as exhibits as part of the ongoing record.

Sincerely,
Ossiris Lynch
Email: ossirislynch1@gmail.com
Phone: (702) 972-7099